This case is a consolidated matter. The numbers are 4-1-2-0-6-0-1 and 4-1-2-0-6-0-2, N.R.A.S.R. versus Rueffner, and for the appellant we have Mr. Pryor for the appellee, Mr. Manchin. Mr. Pryor, you may proceed. May it please the Court, Mr. Manchin. As the Court is aware, this is a termination of the parental rights appeal, and the Court is also aware that no trial court determination on termination of parental rights will be disturbed unless it is found to be against the manifest way of the evidence, which standards have been defined as opposite result. The Court must clearly be apparent from a review of the evidence. The issues are whether or not the Court was in receipt of sufficient evidence to satisfy the state's burden that the father was unfit and that it was in the best interest of the children that his parental rights be terminated. Contrary to the order of my arguments in brief, with the panel's allowance, I'll argue in reverse. The Court was presented with a situation where the state was present with witnesses and the defendant was not. The evidence that was presented to the trial court indicated that the children had been removed from the mother at a time when the father was in jail, that the father made no efforts to complete the provisions of the service plan, which was inhibited by the fact of his incarceration. After hearing the evidence, the Court found the father unfit, moved immediately to the unfitness portion, and heard evidence that the father had not had any contact with the children for several months, that had made no effort to contact the children, and had made little or no effort to satisfy his fatherly duties as far as nurturing his children. Quite frankly, I would confess to the panel that if the panel finds that it was proper to proceed in the father's absence, although the father's attorney made a motion to continue, if the panel finds that, I would admit that the state satisfied their burden of clear and convincing, as long as you accept the fact that the petition originally was alleged against the mother who had custody of the children, the father was not involved, the father is charged with making reasonable efforts, reasonable progress towards the return of the children to resolve the problem that led to their protective custody being issued by the state. The father was not really a player in that game, and I think that the Court should have taken that into more consideration than it did. The other issues are whether or not the trial court was justified in denying the father's motion to continue, such that it could be considered by this panel as an abuse of discretion. The case law, of course, is legion that no one is entitled to a continuance. However, facts and circumstances should be considered by the trial court and the reviewing court as far as whether or not the failure to grant a motion to continue was an abuse of discretion by the court or caused a palpable injustice. I would suggest to the panel that there is no more palpable injustice than being denied your day in court, and that is what the denial of the motion to continue resulted in. Mr. Pryor, he had written notice because he'd been in court when the matter was set for the termination hearing. Correct. And he signed for it. Correct. The signature's on the document. Every time he appeared in court, he was in custody. Correct. When the termination hearing was held, he was no longer in custody. That's my understanding. And that would have been the first time he had to get himself to court. Without help. Right, without help from the sheriff or the DOC. So he just didn't show up. Justice Pope, I believe that's an accurate depiction of the record. Is there anything in the record, because I read the record, I could not find anything that said why he didn't show up. He never filed anything, did he, with the court, in a way of asking to be excused for his failure to continue or to show good cause for failing to appear? I'm sorry, I didn't understand. Did he file anything with the trial court after the hearing was held? No, he did not. So he never gave the court any reason to reconsider its motion to continue? To reconsider, no. That forum was never provided. And I also searched the record for the same thing, and I agree with you. It's not there. I understand that the trial court and Justice Pope consider the fact that he is in the graces of either the county or the state, and to a certain extent can never be late and can never miss a hearing because he's accompanied by the personnel that have him incarcerated. But it seems as though the trial court, and maybe this panel, is saying discount the fact that he was at 12 out of 12 hearings because he was a guest of either the county or the state. He was in jail. He didn't have a choice. Therefore, the court should ignore the fact that 1 out of 13 doesn't justify a continuance. But also, once he was released, he never contacted the caseworker. She had to track him down. That is correct. She offered him a ride to the hearing. Right. She did offer him the ride to the hearing. I'm not quite sure as far as the time frame. I don't know how long prior to that hearing date he had been released, and I don't know when the caseworker had offered to give him a ride. Obviously, there was contact between the father and the caseworker, although the caseworker indicated that she initiated it herself. So there was contact between the caseworker and the father after he was released from prison. Based on her initiative, though. According to her testimony. And according to her testimony is the problem that I have with the court entering the order, finding the father unfit and terminating parental rights. The court points to the fact that he was in jail, which explains why he was consistent in all of his appearances in the entire proceeding. He was in jail, therefore his attendance really didn't count. I don't think that's necessarily fair, but it certainly is accurate that he was incarcerated for 12 of 12 hearings, and the last hearing he was not incarcerated. So the trial court points to jail, and maybe the panel considers that important. But where I grew up, there was an expression, the road goes up and the road goes down. See, what I'm saying is, you consider the jail as far as him being in attendance 12 out of 12 times, but you don't consider the jail as far as creating an inability to further, to accomplish the task of the service plan. It seems as though the court only concentrates on jail against the father, quite frankly. I think if the jail is considered an important factor in the entire case, then the court would have given more consideration to the fact that during the entirety of the case, the father is in jail, there was no ability for him to visit with the children. I guess communication was possible, but it wasn't undertaken, and there was no way for him to accomplish the goals of the service plan. Although the caseworker indicated there was counseling available in the jail, she wasn't specific as far as whether or not the counseling would have satisfied the goals of the service plan. Another point that was brought up in the brief, I pointed out on the father's behalf that there was no first appearance conducted as far as the motion for termination of parental rights. I was not trial counsel in this case. However, I have been trial counsel in this type of case for the last 20 years. First appearances, in my experience, result in the court advising the father the nature of the petition against him, advising the father the burden of proof that has to be sustained by the state, explaining to the father that he has the right to present evidence on his own behalf, and if his witnesses are reluctant to come to court, the court will issue a subpoena to compel them to come, and that if there is a finding of unfitness, then the matter will move on to termination of parental rights. All of that information, which I have sat through countless times, was not provided to this father. Certainly it isn't anywhere in the record. And I believe that, although there's no requirement of the Juvenile Court Act that a first appearance be conducted, it seems to me that it should be considered by the panel in the totality of the circumstances whether or not the court's order of finding unfitness and terminating the parental rights was supported by the evidence in the totality of the situation. No first appearance. Maybe he didn't know that he couldn't show up for the 13th hearing. Maybe he didn't know what would happen if he didn't show up. Maybe he didn't know what the 13th hearing was about, whether or not it was the hearing on unfitness and then would be followed by termination. He had no knowledge that it would be unfitness and best interest on the same set. And as the panel knows by looking through the record, I listed in the brief 12 hearings, and I would suggest to you that five of those hearings were substantive. There was an adjudication, there was a disposition, and the other three hearings that were substantive were review hearings, and of course the last hearing being on the termination. The other seven hearings were continuances. They were continuances requested by the state. I believe they're all by agreement. I believe that's what the court file shows. But seven out of 12 of the hearings that were attended by the defendant were continuances. So it seems to me an abuse of discretion and a palpable injustice for the court not to grant the continuance requested by the father on the 13th hearing, the only one that he didn't appear for, which was joined by the guardian ad litem. The guardian ad litem did not object. In fact, I believe she said that she joined with the father's attorney to continue the matter. And as a carbon copy, the father's attorney also asked for a continuance after the court found unfitness so that the father could be there to present evidence as to best interest. And also at that point in time, I suppose you could ask the court to reconsider finding unfitness. As the court knows, and again the case law is many, termination of parental rights is very important and is viewed very seriously by the state of Illinois and by the court system. It seems to me that its importance and the effect it had on this father was not appreciated by the trial court. In denying the motion to continue was not considered by the trial court as far as not conducting a first appearance on the motion for termination. And the court hearing one side of evidence in and of itself, I don't believe satisfies its burden if the panel believes that the father did have a right to be present, which of course he did, but had a right or it would be in the best interest of, it would not be an abuse of discretion to grant the father's motion to continue. I would ask the court to reverse and remand this matter to the trial court. I am available for any questions for the panel. I see no questions, but you will have rebuttal. Thank you. Just as a cleanup matter before you proceed, Mr. Manchin, I did indicate this is a consolidated appeal, but I failed to mention there are two minors involved, S.R. and P.R. Please proceed. May it please the court, counsel? The question of an abuse of discretion is decided, is the trial court's decision arbitrary or such that no reasonable person would agree with the judgment of the trial court? And I think in this particular case there was no abuse of discretion in denying the request for continuance. The case law is clear that there is a need for speed in these type of proceedings, that the interest of the child and the interest of now the proceedings, you don't keep delaying and delaying and delaying, waiting for a parent to finally show up in court. Here we have a parent who was aware of the date of the hearing. As Justice Pope noted, he signed that he knew the date. He was in court when the date was set. He had a case worker telling him about the court date and say, I'll provide a ride for you. He doesn't bother to show up. He doesn't bother to give his attorney any explanation. He doesn't bother to give the court any explanation. He just fails to show up. I think under those circumstances the trial judge was well within his discretion in saying, no, we're not going to delay this proceeding any further. This case has been pending for many years with many review hearings. Let's get to the question of whether there's unfitness and established finality for these children. I think the trial judge correctly viewed the respondent's presence in jail both in terms of, okay, as far as excused absences from court, there were none, and the fact that the very first time the respondent is responsible on his own for getting there, he fails to show up after not even bothering to contact his case workers, is very telling as far as his interest in the case or the likelihood he's going to show up. And I think the trial court was just correct in his determination not to continue this matter. As regards to the claim that the respondent could not do services in prison, the testimony was that the services were available, but he did absolutely nothing. He did not contact case workers. He did not try to inquire about his children. He did not write any letters. He did not make any phone calls. He did not try to do any services at all in prison. Under the terms of unfitness for lack of responsibility, concern or interest, that in itself is proof of unfitness, and we don't need to get to the other two grounds of unfitness found by the trial court of lack of reasonable effort and lack of reasonable progress in the nine-month, respective nine-month period. And as far as those, the very fact that there's no contact, no services, no nothing, shows that there's no progress and no effort. And the cases state that a parent's presence in jail cannot be excused in terms of excusing his lack of efforts or excusing his lack of progress because the child is continuing to grow and develop in need of parents, and that means the parent needs to be doing something so when he is able to finally get out, he is closer to being able to step into the position of a parent. And here we have a respondent that is in no shape ready to step into the place of a parent. We have a parent who has just disappeared once he's out of jail. I think the trial court's determination as far as the continuance and as far as the substantive proof of unfitness is correct. With regard to the admonitions, there is no requirement that the trial court at the hearing, what was the date, the August date I believe it was, where the last hearing he appeared at where he was on this decision to terminate, there is no requirement that the trial court at that particular hearing give any sort of admonitions to the respondent as to what is at stake in the proceeding or what's going to happen if he does not appear or does not appear. There is absolutely no requirement at all. The only statutory requirement for admonitions applies to an initial appearance by the parties. And this is not, and the hearing to which the respondent refers in his brief was not an initial, it was February 15, 2012, not August, my slip of the mind there. It was February that the hearing was held. That was not an initial appearance. So the statutory requirement of admonitions simply does not apply. So I think that the question of admonitions should be rejected by this court. Not only are none required, the respondent was present, did not object, did not object at a later hearing to the lack of admonitions and has not shown any kind of prejudice for the lack of admonitions. We have here a parent who has been through several review hearings and has received several case plans, case files telling him you need to do services, you need to cooperate, and if you're not, you're going to be in danger of losing your children. He now has a petition in his hands saying the state is seeking to terminate his parental rights. I think at that point he's had all the warnings and admonitions he's entitled to. And the lack of admonitions at that February hearing simply cannot be grounds to disturb the child court's determination that the respondent was unfit and that the best interest of these children would be served by terminating parental rights. Is there no questions of the court? I see none. Thank you, Mr. Manchin. Rebuttal, please. Thank you, Your Honor. Just briefly, my opponent used words need for speed and can't wait for the parents to finally show up in court. That's right. These are supposed to be on an expedited basis. And the court in the state shouldn't have to wait for a parent to finally show up in court. And the case is cited by my opponent in his brief, JL and MF. JL, the process took two years. MF, the process took a year and a half. And at the time of the hearing, the mother was not going to be released from prison for another five years. Now, as always, cases are factually similar when cited for authority. But I believe what the state is trying to do is to put a square peg into a round hole. This isn't a case where the parent continually didn't show up. This isn't a case that had languished a long time. This is a case that went very expeditiously as far as from the dispositional hearing to the termination hearing. And, of course, the nine-month period was a single nine-month period. As far as the third allegation of unfitness, they were concentrating only on March 31 to 12-31, 2011, for the measuring stick for whether or not reasonable progress was done. So this isn't a case where there have been several nine-month periods and a long period of time for the father to perform. I believe this case is factually dissimilar from the cases cited by my opponent. And I warrant consideration by the court for a reversal. Okay, thanks to both of you. The case is submitted and the court stands in recess.